UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JUNE POLLARD,

   **Plaintiff,**

  - against -               07 CV 0445 (NG) (LB)


**ULTRA FLEX PACKINGING CORP. et al.,**
                      <u>OPINION & ORDER</u>

   **Defendants.**
-----------------------------------------------------------------x
**GERSHON, United States District Judge:**

  *Pro se* plaintiff June Pollard brings the present action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that defendant Ultra Flex Packaging Corporation ("Ultra Flex") discriminated and retaliated against her and wrongfully terminated her employment based on her race, gender, color, and national origin. Ultra Flex now moves to dismiss Ms. Pollard's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, Ultra Flex's motion to dismiss is granted.

**BACKGROUND**

  In her initial complaint, filed with this court on January 24, 2007, Ms. Pollard alleged that Ultra Flex discriminated and retaliated against her between July 1995 and February 2004, wrongfully terminated her employment in February 2004, and asked her to sign a severance agreement upon termination that included $18,000 in severance pay. Ms. Pollard alleged that, when she refused to sign this severance agreement, she was forced to sign a new severance agreement that entitled her to $75,520.12 in severance pay and that obligated her to relinquish legal claims against Ultra Flex. Ms. Pollard further alleged that she filed charges with the Equal

Employment Opportunity Commission ("EEOC") on September 16, 2005 and September 11, 2006.

In an order dated April 16, 2007, the court noted that Ms. Pollard's EEOC charges, filed more than 300 days after the last discriminatory act alleged in her complaint, fell outside Title VII's 300-day filing requirement. 42 U.S.C. § 2000e-5(e)(1). Nevertheless, cognizant of Ms. Pollard's *pro se* status, the court described the doctrine of equitable tolling and granted Ms. Pollard leave to amend her complaint and submit additional information detailing any possible impediments she may have faced in filing the EEOC charge during the 300-day filing period.[1]

On May 15, 2007, Ms. Pollard filed an amended complaint which describes bouts of "dizziness, extreme weakness on the feet, numbness and hyperventilation" that occurred in June 2003 and resulted in a two-day hospitalization at the end of June 2003, shortly before Ms. Pollard received her termination notification from Ultra Flex on July 7, 2003. Ms. Pollard also alleges in her amended complaint that, after selling her home and finishing her work at Ultra Flex, she decided to move to Florida in February of 2004 "to recover [her] health." After moving to Florida in February 2004, Ms. Pollard negotiated an accelerated severance payment schedule whereby, instead of receiving her severance pay in bi-weekly installments, Ms. Pollard "received the balance of payments due . . . at the end of April 2004." Documents attached to Ms. Pollard's complaints indicate pre-tax severance payments of $75,520.12, the same amount that Ultra Flex promised Ms. Pollard in her severance agreement. While in Florida, in addition to negotiating an accelerated severance payment schedule, Ms. Pollard alleges that she provided

---

[1] In the same April 16, 2007 order, the court dismissed Ms. Pollard's claims against defendants Blatt, Singh, Rodney, and Todd M. Addision—individuals identified as Ms. Pollard's supervisors or co-workers—because Title VII does not provide for individual liability of employees. *See* April 16, 2008 Order, p. 6. The court also dismissed Ms. Pollard's claims against the New York State Department of Labor and several of its officials because of lack of jurisdiction, Eleventh Amendment immunity, and allegations too vague and conclusory to state a claim for deprivation of civil rights. *Id.*

Ultra Flex some services after her termination for which she did not receive pay. With regard to the current status of her health, Ms. Pollard states in her amended complaint that she has "improved considerably from where [she] was, with the exclusion of [her] high blood pressure which was detected in the Summer of 2006" and that her "health was much better" by February 2005, when she moved back to New York.

In her amended complaint Ms. Pollard also details her attempts, beginning in February 2005, to report Ultra Flex's alleged discrimination to various governmental agencies. According to her amended complaint, Ms. Pollard filed for unemployment benefits with the New York State Department of Labor ("NYS Department of Labor") in February 2005, at which time Ms. Pollard "explained the reason for [her] termination by Ultra Flex Packaging and expected a rightful investigation." In a letter attached to Ms. Pollard's amended complaint and dated June 15, 2005, a senior investigator on behalf of the NYS Department of Labor responded to Ms. Pollard by stating, "I am sorry that I must report to you that the NYS Department of Labor does not have the authority or jurisdiction to investigate or take any action against your former employer, Ultra Flex Packaging Corporation. The kinds of abuses and improprieties allegedly engaged in by your former employer would have to be reported to and investigated by a variety of Federal and New York State agencies, other than the NYS Department of Labor." The senior investigator also explained that "you [Ms. Pollard] were initially deemed eligible for benefits in regard to your separation from Ultra Flex, but you had two additional employers in Florida that you worked for <u>after</u> your employment with Ultra Flex had ended." (emphasis in original). And, in a later communication dated July 25, 2005, the same senior investigator indicated: "The reason for your separation with Ultra Flex was meaningless in terms of your claim [for unemployment benefits] since you had other employment which disqualified you. Since you had employment

with Sheraton Safari and Publix, which both ended under disqualifying circumstances (voluntary quit [sic] for personal, non-compelling reasons) prior to your claim being filed, you were ineligible for benefits."

In addition to the 2005 correspondence described above, Ms. Pollard also attaches the following letters to show that she sought assistance in appealing the denial of her unemployment benefits, investigating the circumstances of her termination, and reporting the illegal immigration activities that allegedly occurred at Ultra Flex. First, in a May 24, 2005 letter, written in response to a letter that Ms. Pollard addressed to President Bush, the Acting Director of Presidential Correspondence indicated that Ms. Pollard's inquiry would be sent to the Department of Labor. Later, in a January 30, 2006 letter, Ms. Pollard wrote to the City of New York Law Department that her "numerous letters to Washington, Mayor, Atty. General Eliot Spitzer, Department of Labor, Human Rights Commission, and Equal Employment Opportunity Council have consistently been dismissed." Shortly thereafter, in a February 14, 2006 letter to Governor George Pataki, Ms. Pollard indicated that "for over a year, to no avail, I have sought justice covering my termination from my former company, Ultra Flex . . ." Ms. Pollard also attaches to her amended complaint six additional letters that she wrote to the NYS Department of Labor, dated July 12, 2005; July 22, 2005; February 10, 2006; March 23, 2006; August 4, 2006; and September 3, 2006, which reflected her desire to secure unemployment benefits and seek an investigation into the circumstances of her termination.

Finally, in her opposition to Ultra Flex's motion to dismiss, Ms. Pollard reiterates that she "expected the New York State Department of Labor to conduct an appropriate investigation into the circumstances of [her] removal, which the White House acted as intermediary on. There was

never an investigation . . . and [t]he U.S. Equal Employment Opportunity Commission Granted A Notice Of Right To Sue based on the facts and Plaintiff filed timely and is exercising such."

Arguing that Ms. Pollard neither filed a timely EEOC charge nor established a basis for equitable tolling, Ultra Flex now moves for dismissal of Ms. Pollard's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

On a motion to dismiss, the allegations in the complaint are accepted as true. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). When considering a motion to dismiss, "the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint . . . and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff." *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) (internal quotations and citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, citations, and alterations omitted). A plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. Nevertheless, a document filed *pro se* still must be "liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. Keycorp*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted) *quoting Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197 (2007) (per curiam). A court "must . . . interpret [*pro se* complaints] to raise the strongest

arguments that [they] suggest . . . ; [t]his is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal citations and quotations omitted).

I.   Whether Ms. Pollard's Title VII Claims Are Time-Barred

A Title VII claim is considered time-barred if a plaintiff "does not file a charge with the EEOC within 300 days after 'the alleged unlawful employment practice.'" *Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 133-34 (2d Cir. 2003), *quoting* 42 U.S.C. § 2000e-5(e)(1). Although a hostile work environment claim is treated as a continuing violation and is considered timely so long as one act contributing to the claim occurred within the 300-day statutory period, discrete acts of discrimination such as termination, failure to promote, or denial of transfer that occur outside the limitations period are considered untimely even if other acts of discrimination occurred within the statutory period. *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111-114, 116 (2002). Nonetheless, the 300-day deadline for filing a formal EEOC complaint "is not jurisdictional and, like a statute of limitations, is subject to equitable tolling." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). "The burden of demonstrating the appropriateness of equitable tolling, however, lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). Circumstances that might warrant equitable tolling include, *inter alia*, a plaintiff's medical or mental impairment which prevented plaintiff from timely filing, *see, e.g.*, *Chapman v. ChoiceCare L.I. Term Disability Plan*, 288 F.3d 506, 508 (2d Cir. 2002), and a plaintiff's assertion of her rights in the wrong forum. *Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 24 (2d Cir. 1985).

In the present case, Ms. Pollard alleges that she filed her first EEOC charge on September 16, 2005. Accordingly, unless Ms. Pollard establishes that she is entitled to equitable tolling, her

EEOC charge is untimely as to alleged unlawful employment practices that occurred prior to November 20, 2004. When given leave to describe any impediments to her timely filing that might warrant equitable tolling, Ms. Pollard described health issues, as well as her attempts to file complaints with various government agencies.

A. Ms. Pollard's allegations of poor health

Ms. Pollard has failed to plead facts sufficient to establish her entitlement to equitable tolling based on poor health. Equitable tolling is reserved for those "rare and exceptional circumstances . . . in which a party is prevented in some extraordinary way from exercising his rights." *Id.* (internal quotation marks and alteration omitted). A plaintiff's "conclusory or vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights," is insufficient to warrant equitable tolling. *Boos*, 201 F.3d at 185 (2d Cir. 2000) (affirming the district court's denial of equitable tolling even though plaintiff alleged that she suffered "paranoia, panic attacks, and depression"). Although Ms. Pollard describes "dizziness, extreme weakness on the feet, numbness and hyperventilation" that resulted in a two-day hospitalization in June 2003, this hospitalization pre-dates her notice of termination and occurred nearly two years before Ms. Pollard eventually filed her first EEOC charge. Furthermore, despite her claims of poor health, it is apparent from her complaint and the documents attached thereto that Ms. Pollard, during the limitations period, was able to (1) work for six months at Ultra Flex after receiving her notice of termination, (2) sell her home in New York, (3) relocate to Florida, (4) obtain other employment at Publix and Sheraton, (5) negotiate an accelerated schedule for her severance pay, (6) relocate back to New York, and (7) write numerous letters to various government agencies regarding her

termination and denial of unemployment benefits.² Based on the forgoing, Ms. Pollard has failed to plead facts sufficient to establish that her alleged health condition prevented her from pursuing her rights. Accordingly, Ms. Pollard is not entitled to equitable tolling on this basis.

      B.    <u>Ms. Pollard's unsuccessful attempts to file discrimination complaints</u>

In her amended complaint, Ms. Pollard described her numerous unsuccessful attempts, beginning in February 2005, to report Ultra Flex's alleged discrimination to the proper government agencies. Equitable tolling may be warranted in certain situations where a plaintiff has "asserted [her] rights in the wrong forum." *Miller*, 755 F.2d at 24. However, even if this court treated Ms. Pollard's first attempt to report Ultra Flex's discrimination to government officials as a valid charge filed with the EEOC, any claim that accrued prior to or during Ms. Pollard's termination still would be untimely. Ms. Pollard's first attempt to assert her rights—even in the wrong forum—occurred more than 300 days after Ms. Pollard's employment was terminated at the end of February 2004. Accordingly, Ms. Pollard's claim for wrongful termination,³ as well as any claim that Ms. Pollard was discriminated against or paid improperly while still employed at Ultra Flex,⁴ would be untimely even if the court equitably tolled the limitations period based on Ms. Pollard's assertion of her rights in the wrong forum.

---

² The court has considered Ms. Pollard's complaint and amended complaint, as well as all documents attached thereto. *See Dangler*, 193 F.3d at 138 (When considering a motion to dismiss, "the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the complaint") (internal quotations and citations omitted).

³ Ms. Pollard's wrongful termination claim accrued on July 7, 2003, the date on which she was given notice of termination. *Miller*, 755 F.2d at 23 (noting that the 300-day limitations period begins from the date upon which the employee receives a "definite notice of the termination, not upon discharge").

⁴ Even though Ms. Pollard asserts that she first discovered in December 2004 that Ultra Flex had cheated her out of pay in 2004, such alleged misconduct would have or should have been apparent, at the very latest, at the time that Ms. Pollard received her last pay check in February 2004. Accordingly, any claim by Ms. Pollard based on underpayment of salary would have accrued, at the very latest, in February 2004.

With regard to any claims of post-termination misconduct, Ms. Pollard has failed to establish that any of her complaints—either her first communication in February 2005 with the NYS Department of Labor or her other letters to various government agencies—included allegations of *post-termination* misconduct. A plaintiff's claim of post-termination discrimination is barred when the plaintiff's EEOC charge includes allegations only of pre-termination discrimination and the alleged post-termination discrimination is not "reasonably related" to the allegations of pre-termination discrimination included in the EEOC charge. *See Sundaram v. Brookhaven Nat'l. Laboratories*, 424 F.Supp.2d 545, 568 (E.D.N.Y. 2006). In *Sundaram*, the plaintiff's EEOC charge did not include any allegations regarding post-termination failure to rehire and related only to alleged discriminatory conduct, such as failure to promote and failure to pay a fair salary, leading up to and including the plaintiff's alleged wrongful termination. 424 F.Supp.2d at 560, 568. The alleged failure to rehire was not "reasonably related" to the discrimination alleged in the EEOC charge in the sense that it did not fall "within the scope of the EEOC investigation which [could] reasonably be expected to grow out of the charge of discrimination." *Id.* at 568 (internal citations and quotation marks omitted). Likewise, Ms. Pollard's allegations of post-termination discrimination are not "reasonably related" to her complaints of pre-termination misconduct. Construing Ms. Pollard's *pro se* complaint broadly, it appears that Ms. Pollard alleges three claims that might have accrued after the date on which she was terminated: (1) that Ultra Flex misreported her income to the NYS Department of Labor in December 2004; (2) that Ultra Flex "likely lessened" her severance payment; and (3) that she provided some post-termination services to Ultra Flex after moving to Florida for which she did not receive pay. Although Ms. Pollard alleges that Ultra Flex engaged in this post-termination misconduct in 2004, well before Ms. Pollard first attempted to assert her

rights in February 2005, Ms. Pollard's letters to government agencies throughout 2005 and 2006 do not include allegations of such post-termination misconduct. Rather, the substance of Ms. Pollard's letters to government agencies revolve solely around (1) the alleged illegal immigration activities she observed at Ultra Flex, (2) the denial of her unemployment benefits by the NYS Department of Labor, and (3) instances of alleged discrimination leading up to and including her termination from Ultra Flex in February 2004.[5] As in *Sundaram*, Ms. Pollard's allegations of post-termination misconduct against Ultra Flex are not "reasonably related" to her complaints of pre-termination misconduct against Ultra Flex because these allegations do not fall within the scope of an investigation which could reasonably be expected to grow out of Ms. Pollard's complaints.[6] Accordingly, even if this court treated Ms. Pollard's attempts to assert her rights in the wrong forum as properly filed EEOC complaints, Ms. Pollard still has failed to show that she exhausted her administrative remedies with regard to allegations of post-termination misconduct.

---

[5] The only possible reference to post-termination misconduct in Ms. Pollard's letters is in a ten-page singled-spaced letter dated July 12, 2005 and addressed to the NYS Department of Labor. In this letter, Ms. Pollard included four sentences describing an incident in which a prospective employer delayed hiring Ms. Pollard because of Ultra Flex's alleged delay in providing a reference. Although she noted in her letter that the prospective employer eventually did offer her a position, Ms. Pollard did not indicate the dates on which Ultra Flex's allegedly delayed its reference. The immediate context of the letter relates to Ultra Flex's alleged misconduct near the end of Ms. Pollard's employment, *i.e.*, the six months between July 2003, when Ms. Pollard received notice of termination, and February 2004, when Ms. Pollard was terminated. Accordingly, it is unclear from Ms. Pollard's letter whether this alleged delay in providing a reference occurred as she was looking for a job while still employed at Ultra Flex or after her employment ended in February 2004. Furthermore, there are no allegations of the type of post-termination misconduct—lessened severance pay, improper reporting of income, or failure to pay for services rendered—that Ms. Pollard alleges in her amended complaint. Moreover, contrary to the allegations in her amended complaint that Ultra Flex "likely lessened" her severance pay, this letter dated July 12, 2005 states that "[t]he severance pay of $75,000 that I received by the company was an increase from the $19,000 initially offered."

[6] Furthermore, although claims that allege retaliation against an employee for filing an EEOC charge may be considered "reasonably related" to the underlying EEOC charge, *Butts*, 990 F.2d at 1402, this does not apply to the present case because Ultra Flex's alleged post-termination discrimination pre-dated Ms. Pollard's first complaint to any governmental agency and therefore could not have been in retaliation for Ms. Pollard's complaints to the government. Moreover, although claims of further incidents of discrimination may be considered "reasonably related" if carried out in precisely the same manner as the conduct alleged in the EEOC, *Id.* at 1402-03, it is readily apparent that the alleged post-termination misconduct described above is not the same as the pre-termination discrimination alleged by Ms. Pollard.

II.     Ms. Pollard's Severance Agreement

As an alternative ground for dismissal, Ultra Flex argues that Ms. Pollard's complaint should be dismissed because Ms. Pollard signed a severance agreement that, in exchange for $75,520.12, obligated Ms. Pollard to relinquish legal claims against Ultra Flex. Because Ms. Pollard's complaint has been dismissed on other grounds, the court need not resolve whether Ms. Pollard's severance agreement, which Ms. Pollard asserts she signed under duress, operates as a waiver of her claims against Ultra Flex.

## CONCLUSION

For the reasons discussed above, Ultra Flex's motion to dismiss is granted. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON
United States District Judge**

**Dated:  Brooklyn, New York
           June 20, 2008**